UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| **LARRY HIGGINS, et al.,** | **CIVIL ACTION NO. 12-cv-183-KKC** |
|     **Plaintiffs,** | |
| **V.** | **OPINION AND ORDER** |
| **BAC HOME LOANS SERVICING, LP, et al.,** | |
|     **Defendants.** | |

*** *** ***

This matter is before the Court on the motion to dismiss (DE 52) filed by the Defendants Federal National Mortgage Association and Federal Housing Finance Agency. For the following reasons, the motion will be denied but the Court will order the Plaintiffs to file an amended complaint making clear whether they seek actual damages

**I.  Facts**

The Court set forth the facts of this case in a prior opinion on the motion to dismiss filed by three defendants (Bank of America, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, N.S.) and joined by the remaining four defendants.

In short, the Plaintiffs are Kentucky homeowners who borrowed money to purchase homes and also pledged their homes as collateral for the loans by way of mortgages. The Plaintiffs assert that the Defendants violated two Kentucky statutes – KRS §§ 382.360 and 382.365 – because the Defendants were assigned the Plaintiffs' mortgages securing the Plaintiffs' notes but never recorded the assignments with the county clerk.

With the motion currently before the Court, two of the Defendants – Federal National Mortgage Association ("Fannie Mae") and the Federal Housing Finance Agency (the "Agency") – move to dismiss the claims against them. These Defendants argue that the claims against them must be dismissed because a federal statute prohibits the imposition of penalties or fines on either of them and the plaintiffs have failed to plead any actual damages. Fannie Mae and the Agency also request that the Plaintiffs' claim for injunctive relief be dismissed. This Court dismissed that claim in an opinion and order on the Defendants' joint motion to dismiss. Accordingly, this portion of the motion to dismiss will be denied as moot.

II.     Analysis

A.     **Statutory minimum damages and treble damages**

Fannie Mae and the Agency argue that, pursuant to a federal statute, they cannot be assessed the treble damages and statutory minimum damages provided for in the Kentucky recording statutes. The state statute provides, "[d]amages under this subsection for failure to record an assignment pursuant to KRS 382.360(3) shall not exceed three (3) times the actual damages, plus attorney's fees and court costs, but in no event less than five hundred dollars ($500)." KRS § 382.365(5). The statute establishes minimum damages of $500 and maximum damages of three times the actual damages incurred by the property owner.

The federal statute that the Defendants rely on provides that "[t]he Agency shall not be liable for any amounts in the nature of penalties or fines, including those arising from the failure of any person to pay . . . recording or filing fees when due." 12 U.S.C. § 4617(j)(4). The Defendants argue that the treble damages and minimum statutory

2

damages provided for in the Kentucky statutes constitute a fine or penalty and, pursuant to the federal statute, cannot be imposed against either the Agency or Fannie Mae.

In response, the Plaintiffs argue that the federal statute bars imposing fines and penalties against only the "Agency" and that "Agency" is expressly defined as the Federal Housing Financing Agency. 12 U.S.C. § 4502(2). Thus, they argue, the provision does not prohibit the imposition of fines and penalties on Fannie Mae.

In *Federal Housing Fin. Agency v. City of Chicago*, 962 F. Supp. 2d 1044 (N.D. Ill. 2013), the district court found this argument "meritless." *Id*. at 1064. "FHFA, as conservator, stepped into the shoes of Fannie Mae and Freddie Mac. *See* 12 U.S.C. § 4617(b)(2)(A)(i)." *Id*. Thus, the federal statute prohibits fines and penalties that "may be charged to the servicers and passed on to FHFA." *Id*. at 1063. Likewise, in *Nevada v. Countrywide Home Loans Servicing, LP*, 812 F. Supp. 2d 1211 (D. Nev. 2011), the district court determined that, under § 4617(j)(4), "while under the conservatorship with the FHFA, Fannie Mae is statutorily exempt from taxes, penalties, and fines to the same extent that the FHFA is." *Id*. at 1218.

In *County of Fairfax, Va. v. Federal Deposit Ins. Corp.*, No. 92-0858, 1993 WL 62247 (D.D.C. 1993), the district court analyzed an identical statute pertaining to the FDIC. 12 U.S.C. § 1825(b)(3). That statute also explicitly exempts the FDIC from any payments "in the nature of penalties or fines" arising from the failure to pay personal property tax or recording fees when due. The FDIC was appointed as receiver for the National Bank of Washington. The county sought to collect personal property taxes owed by the bank including late payment penalties and interest. Like the Plaintiffs here, the county argued that the statute prohibited the imposition of fines and penalties against only the FDIC, not the bank itself. The court determined "[t]hat § 1825(b) is applicable to the FDIC as receiver

3

is incontrovertible from the very terms of the statute itself. The preamble . . . explicitly speaks of the applicability of the provisions to the FDIC when it acts as receiver. The County's contention is therefore without merit." *Id.* at *4.

Here too, the prohibition against imposing fines and penalties on the Agency applies "in any case in which the Agency is acting as a conservator or a receiver." 12 U.S.C. §4617(j)(1). When the Agency is acting in that role, there is essentially no distinction between the Agency and Fannie Mae. To understand this, it is necessary to understand the nature of the relationship between the two entities.

The Sixth Circuit has explained that:

> Defendant Fannie Mae is a corporation chartered by Congress to "establish secondary market facilities for residential mortgages," in order to "provide stability in the secondary market for residential mortgages," and "promote access to mortgage credit throughout the Nation." 12 U.S.C. § 1716. Defendant Freddie Mac is also a corporation chartered by Congress for substantially the same purposes as Fannie Mae. Id. § 1451. Defendant Federal Housing Finance Agency, is an independent federal agency, created under the Housing and Economic Recovery Act of 2008, Pub. L. No. 110–289, 122 Stat. 2654, *codified in part* at 12 U.S.C. § 4617, *et seq*. The Director of the Agency placed Fannie and Freddie into conservatorships "for the purpose of reorganizing, rehabilitating, or winding up [their] affairs...." 12 U.S.C. § 4617(a)(2). As Conservator, the Agency succeeds to all of the "rights, titles, powers, and privileges" of Fannie and Freddie, and also has the power to "operate" them, "conduct all [of their] business," and "preserve and conserve" their "assets and property." Id. § 4617(b)(2).

*County of Oakland v. Federal Housing Fin. Agency*, 716 F.3d 935, 937 (6th Cir. 2013).

As conservator, the Agency "is charged with taking any action 'necessary to put [Fannie Mae] in a sound and solvent condition.'" *Nevada*, 812 F. Supp. 2d at 1217 (quoting 12 U.S.C. § 4617(b)(2)(D)(i)). "Further, the FHFA has the authority to 'take over the assets of and operate' Fannie Mae and Freddie Mac and to conduct all of their business." *Milwaukee County v. Federal Nat'l Mortg. Ass'n*, No. 12-C-0732, 2013 WL 3490899, at *1

(E.D. Wis.) (quoting 12 U.S.C. § 4617(b)(2)(B)(i)), *aff'd by DeKalb County v. Fed. Housing Fin. Agency*, 741 F.3d 795 (7th Cir. 2013).

"HERA's provisions make it clear that, in the event Fannie and Freddie were placed into conservatorships, Congress intended FHFA to assume complete control of those regulated entities and, in its discretion, 'take such action as may be necessary to put the regulated entity in a sound and solvent condition.'" *City of Chicago*, 962 F. Supp. 2d at 1058 (quoting § 4617(b)(2)(D)(i)). "In other words, FHFA completely controls Fannie Mae and Freddie Mac." *Oakland County v. Fed. Nat'l Mortg. Ass'n*, 276 F.R.D. 491, 494 (E.D. Mich. 2011).

Thus, when the Agency acts as conservator, it acts with complete control over Fannie Mae's assets. By prohibiting the imposition of fines and penalties on the Agency "in any case in which the Agency is acting as a conservator or a receiver," HERA necessarily prohibits the imposition of fines and penalties on Fannie Mae also.

The next issue is whether the Kentucky recording statues impose a "fine" or "penalty" for failing to pay a recording fee. Generally, "if a sum of money is to be recovered by a third person for violation of a statute instead of a person injured, . . . or if the sum exacted is greatly disproportionate to the actual loss, . . . it constitutes a penalty rather than damages." *La Quinta Corp. v. Heartland Properties LLC*, 603 F.3d 327, 343 (6th Cir. 2010) (quoting *Bowles v. Farmers Nat'l Bank of Lebanon*, 147 F.2d 425, 428 (6th Cir.1945)).

The Sixth Circuit has also held that "the word, 'penalty,' strictly and primarily denotes punishment, imposed and enforced by the state, for an offense against its laws. It also commonly is used as including any extraordinary liability to which the law subjects a wrongdoer in favor of the person wronged, not limited to the damages suffered." *United States v. Witherspoon*, 211 F.2d 858, 861 (6th Cir. 1954). While damages are "precisely

5

commensurate with the injury received," a penalty "has no reference to the actual loss sustained by him who sued for its recovery." *Id.*

In *Witherspoon*, the Sixth Circuit analyzed the Surplus Property Act, which prohibits defrauding the government in connection with the purchase or sale of property and requires violators to pay the government $2,000 for each fraudulent act *and* double the amount of any damages actually sustained by the government. 40 U.S.C. § 123(a). The court determined that "[t]he exaction of the arbitrary sum of $2,000 for each offense of obtaining by fraud, surplus property, without regard to its value, is a provision for a penalty. Its purpose is, obviously, to punish an offense against the public justice, in addition to double the amount of all damages suffered by the government." *Id.* at 861.

In *Bowles*, the Court reviewed the Emergency Price Control Act of 1942, which established maximum prices that sellers could charge for various commodities. It provided that any person who bought a commodity for a price above the maximum price could bring an action for either $50 or treble the amount he overpaid, whichever was greater. If the person injured could not bring the action, then the government could.

The court determined that the statute "clearly provided for a penalty." 147 F.2d at 428. In reaching this conclusion, the court stated that "[t]he basic test whether a law is penal in the strict and primary sense is whether the wrong sought to be redressed is a wrong to the public or a wrong to the individual." *Id.* The purpose of the Act was to stabilize prices and prevent speculation during the war. *Id.* The court determined that, "[w]hile private rights and interests are necessarily affected, the controlling purpose of the statute is to protect the public during the war emergency." *Id.*

Even though the act provided for penalties to be paid to either the government or the injured person, "the manifest purpose of [the Act] was to prevent inflationary

tendencies sought to be curbed by the Act as a whole, through punishment of violators of the statute by payment of penalties wither to the Administrator or to the person injured." *Id*. "The amount of such payments, if made to the injured person, supplies a direct and powerful incentive for the enforcement of the Act by the individual." *Id*. "[T]he treble damages provision is intended to be sufficiently attractive to stimulate an aggrieved person to recover his losses and to enforce the law; and it is also intended to be sufficiently burdensome to deter potential violators and to punish actual violators." *Id*.

The court noted that the case before it was brought by the government and, thus, recovery would run to it. Further, the court found that, "in the majority of instances [the Act] make[s] it difficult for the purchaser to recover." *Id*. This was because the Act provided that only the government could bring an action for the "innumerable transactions" that occurred "in the course of trade or business." Individuals were granted a cause of action only in the "relatively fewer transactions not in the course of trade or business." *Id*. Further, individuals had to bring an action within thirty days of the purchase. Thereafter, only the government could bring the claim. *Id*.

In *Bowles*, the government had not alleged any loss in its complaint. *Id*. at 428-29. The court determined that, under the Act, "the sum to be paid is so greatly in excess of the loss incurred that it cannot be explained except upon the theory that the statute intends to subject the wrongdoer to an extraordinary liability not limited to the damages suffered." *Id*. at 429. The court also found the fact that an injured party could sue for $50 or treble the overcharge, "whichever is greater" made clear that Congress's intent was not merely to "make the purchaser whole." *Id*.

In contrast, in *Englander Motors, Inc. v. Ford Motor Co.*, 293 F.2d 802 (6th Cir. 1961), the Sixth Circuit determined that a provision mandating treble damages for persons

7

injured in violation of antitrust laws was not penal, stating "[t]here is not much difference between this kind of action and the ordinary action for damages where exemplary or punitive damages are awarded." *Id*. at 806-07.

Finally, in *Murphy v. Household Fin. Corp.*, 560 F.2d 206 (6th Cir. 1977), the court reviewed the Truth in Lending Act which requires that certain disclosures be made by creditors to consumers. The statute provides that violators are liable to the consumer for actual damages and twice the amount of any finance charge in connection with the transaction. The court concluded the statute was not penal and summarized the factors that the court should consider in making that determination as follows:

> 1) whether the purpose of the statute was to redress individual wrongs or more general wrongs to the public; 2) whether recovery under the statute runs to the harmed individual or to the public; and 3) whether the recovery authorized by the statute is wholly disproportionate to the harm suffered.

*Id*. at 209.

As to the first factor, the court determined that the Act had a "dual purpose." *Id*. at 211. It was intended to remedy harm to individual financial interests but also to "deter socially undesirable lending practices." *Id*. The focus, however, was on the "individual consumer of credit as the person primarily injured who should be encouraged to prosecute actions and . . . to recover directly and adequately for harms done." *Id*. The court determined that the "twice the finance charge" provision was intended to ensure enforcement of the act by encouraging private causes of action. *Id*. at 210.

As to the second factor, the court noted recovery under the statute ran to the individual, not the government. *Id*. As to whether the recovery was wholly disproportionate to the harm, the court determined that individuals not provided the disclosures required under the Act "would have difficulty demonstrating the precise amount of their injuries."

The court determined that the "twice the finance charge" provision amounted to "liquidated damages" and avoided "the difficulty in calculating damages." *Id*. The fact that the statute allowed for recovery of more than actual damages did not necessarily make it penal "where the wrong addressed by the statute is primarily a wrong to the individual." *Id*.

Guided by these cases, the Court finds that the damages provision in the Kentucky recording statutes is not properly characterized as penal.

The statutes provide a private right of action to only individual landowners, not the government. KRS § 382.365(3). Likewise, recovery runs only to the individual, not to the government. As to the purpose of the recording statutes, by mandating that mortgage assignments be recorded, they serve the public purpose of maintaining "accurate public real estate records." *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163, 168 (Ky. App. 2006). But, as discussed in the court's opinion and order on the joint motion to dismiss, the statutes are also aimed at ensuring that individuals can readily determine the name of the entity that currently owns their mortgage and note.

As to whether the damages provided under the statute are wholly disproportionate to the actual harm suffered, unlike in *Witherspoon* and *Bowles*, the statutes do not mandate double or treble damages but instead provide a cap on damages at an amount equal to treble damages. As to the $500 minimum, unlike in *Witherspoon,* the statute does not permit an individual to recover both this sum *and* an amount based on actual damages. Individuals can either recover actual damages or the $500 minimum. Thus, as in *Murphy*, instead of a penalty, the provision is more properly viewed as a "liquidated damages" provision recognizing the difficulty of quantifying the costs and expenses incurred by an individual whose mortgage is assigned without his knowledge.

Because the damages for failing to record a mortgage assignment provided for in the Kentucky recording statutes are not properly characterized as a fine or penalty, 12 U.S.C. § 4617(j)(4) does not prohibit them from being assessed against the Agency or Fannie Mae.

### B. Actual damages

The Defendants argue that the Plaintiffs do not plead any actual damages. If the Plaintiffs plead no actual damages, then their claim for civil conspiracy fails.

This is because a "necessary allegation" in a civil conspiracy claim is that the conspiracy caused damage. *Davenport's Adm'x v. Crummies Creek Coal Co.*, 184 S.W.2d 887, 888 (Ky. 1945). In fact, in a civil conspiracy claim, "unless something is actually done by one or more of the conspirators which results in damage, no civil action lies against anyone." *Id*. "[D]amages are the essence of a civil conspiracy." 15A C.J.S. Conspiracy § 7. "The damages suffered must be actual damages. If a person suffers no actual damages from the underlying unlawful act, there can be no successful civil-conspiracy action." *Id*.

With regard to damages, the First Amended Complaint states that, "[a]s a proximate result of the Defendant's actions, the Plaintiffs, as well as the proposed Class members whom they seek to represent, have suffered damages in accordance with KRS 382.365." (DE 32, First Amended Complaint ¶ 53.) Because that statute provides for actual damages and the $500 minimum, the complaint could be read to assert a claim for both. Additional allegations in the Complaint, however, indicate that the Plaintiffs do not seek actual damages but instead seek only the $500 statutory minimum.

The Plaintiffs allege that "[t]he only individual questions presented in this proposed Class action concern the computation of relief to be afforded each Class member. That computation is dependent upon the number of times that an individual Class member's lien and mortgage have been assigned but not timely recorded, and may be determined by a

ministerial examination of the Defendant's files." (DE 32, First Amended Complaint ¶ 62.) This indicates that determining each plaintiff's damages would simply require multiplying $500 by the number of times each particular plaintiff's mortgage was assigned but not recorded.

Further supporting this interpretation is the allegation in the complaint that "[t]he management of the proposed Class is not likely to create significant or insurmountable difficulties, since the Defendants' liability to each Class member (and the amount of that liability) may be easily determined by reviewing files maintained by the Defendants and/or MERS as to the number of times a particular Class member's note and mortgage has been assigned to one or more of the Defendants but not recorded." (DE 32, First Amended Complaint ¶ 66(d).) The fact that the amount of the Defendants' liability can be determined solely by reviewing the Defendants' files further indicates that Plaintiffs must be seeking the $500 statutory minimum.

Because damages are central to a civil conspiracy claim, the Plaintiffs will be ordered to amend their complaint to specify whether they seek actual damages. If the Plaintiffs seek actual damages, they shall make further particularized allegations regarding the manner by which they were actually damaged by the acts committed by the Defendants.

### III. Conclusion

For all these reasons, the Court hereby ORDERS as follows:

1) the motion to dismiss (DE 52) filed by the Defendants Federal National Mortgage Association and Federal Housing Finance Agency is DENIED;

2) within 14 days of the entry date of this order, the Plaintiffs SHALL FILE an amended complaint making clear whether they seek actual damages. If the Plaintiffs seek

actual damages, they shall make further particularized allegations regarding the manner by which they were actually damaged by the acts committed by the Defendants; and

3) because the Plaintiffs have been ordered to file an amended complaint in response to the Defendants' motions to dismiss, for administrative purposes, the Plaintiffs' motion to certify a class (DE 49) is DENIED as moot. The Plaintiffs may reassert the motion after filing an amended complaint in compliance with this Court's orders.

Dated this 31st day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY