UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| LARRY HIGGINS, et al.,<br><br>    Plaintiffs,<br><br>V.<br><br>BAC HOME LOANS SERVICING, LP,<br>et al.,<br><br>    Defendants. | CIVIL ACTION NO. 12-cv-183-KKC<br><br><br>**OPINION AND ORDER** |

\*\*\* \*\*\* \*\*\*

This matter is before the Court on the motion to dismiss filed by the Defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, N.S. (DE 53). There are seven defendants in this action. Although the motion before the Court was filed by only three of them, the remaining four defendants have joined in the motion.

The issue in this case is whether certain Kentucky statutes requiring that mortgage assignments be filed with the county clerk require that *all* mortgage assignments be filed, including those that occur by operation of law when the underlying note is assigned.

**I.    Facts**

The Plaintiffs are Kentucky homeowners who borrowed money to purchase homes and also pledged their homes as collateral for the loans by way of a mortgage. The Plaintiffs assert that the Defendants violated two Kentucky statutes because the Defendants were assigned the mortgages securing the Plaintiffs' notes but never recorded the assignments with the county clerk. (DE 32, Complaint, ¶¶ 11-40.)

The first statute provides that "[w]hen a mortgage is assigned to another person, the assignee shall file the assignment for recording with the county clerk within thirty (30)

days of the assignment. . . . ." KRS 382.360(3). That requirement is echoed in the second statute which provides that "an assignee of a lien on real property shall record the assignment in the county clerk's office as required by KRS 382.360." KRS 382.365(2).

According to the Plaintiffs, the Defendants are all lenders who are members of Mortgage Electronic Registration Systems, Inc., or "MERS." (DE 32, Amended Complaint ¶ 12.) The Plaintiffs allege, and there does not appear to be any dispute, that MERS was formed by lenders in order to avoid having to record mortgage assignments and pay county clerks the associated recording fees. (DE 32, Amended Complaint ¶ 41.) *See Christian Cty. Clerk v. Mortgage Elec. Registration Sys, Inc.*, 515 F. App'x 451, 452-53 (6th Cir. 2013).

When lenders who are members of MERS loan money to a borrower to purchase a home, they receive a promissory note from the borrower. The borrower also signs a mortgage which states that it secures to the lender the repayment of the loan and the borrower's performance under the mortgage and the note. (DE 53-2, Mortgage at CM-ECF p. 5.) While the mortgage is intended to provide security to the lender, the mortgage states that MERS is the mortgagee, but "solely as nominee for Lender and Lender's successors and assigns." (DE 53-2, Mortgage at CM-ECF pp. 4-5.) A nominee is the same thing as an agent. *BF Avery & Sons Co. v. Glenn*, 15 F. Supp. 544, 548 (W.D. Ky. 1936).

The borrower continues to owe the lender under the note and it is the lender that has the right to take action under the mortgage if the borrower should default on its obligations. (DE 53-2, Mortgage at CM-ECF pp. 6, 10.) MERS is the mortgagee in name only. According to the Plaintiffs, MERS acts solely through its "certifying officers," most of whom are employees of its member banks. (DE 55, Pfs.' Mem. at CM-ECF p. 4.)

The mortgage is then recorded in the local land records with MERS as the named mortgagee. When the original lender assigns the promissory note to a second entity, as long as the assignee is also a MERS member, the MERS database tracks the transfer but

neither the assignor lender nor the assignee lender record the assignment in the public records. This is because, according to MERS, the mortgagee remains MERS as nominee for the lender no matter how often the note is assigned. Thus, throughout the assignments of the note, the public records continue to reflect that MERS is the mortgagee. *See Christian Cty. Clerk*, 515 F. App'x at 452.

## II. Analysis

### A. The statutes require that all mortgage assignments be recorded.

The Defendants state in their motion to dismiss that Kentucky courts have "consistently held that MERS complies with Kentucky law." (DE 53-1, Defs.' Mem. at 5.) In support of that assertion, the Defendants cite various cases in which Kentucky court have recognized that the borrower "executed a mortgage with MERS." *Hall v. Mortgage Elec. Registration Sys, Inc.*, 396 S.W.3d 301, 302 (Ky. 2012); *Mortgage Elec. Registration Sys., Inc. v. Abner*, 260 S.W.3d 351, 352 (Ky. App. 2008).

Other cases cited by the Defendants recognize MERS' status as a nominee for the lender pursuant to the language of the mortgage. *In re Jessup*, No. 09-50922, 2010 2926050, at * 3 (Bankr. E.D. Ky. 2010); *Mortgage Elec. Registration Sys., Inc. v. Roberts*, 366 S.W.3d 405, 407 n.1 (Ky. 2012); *Robinson v. Countrywide Home Loans Servicing, L.L.P.*, No. 2010-CA-002327, 2012 WL 1142947, at *1 (Ky. App. 2012); *McCord v. Countrywide Home Loans Servicing, LP*, No. 2009-CA-002048, 2011 WL 832435, at *1 (Ky. App. 2011); *Bell v. Countrywide Home Loans, Inc.*, No. 2010-CA-000347, 2012 WL 1758092, at *1 (Ky. App. 2012); *Morgan v. HSBC Bank USA*, No. 2009-CA-597, 2011 WL 3207776, at *1 (Ky. App. 2011).

The Defendants also cite case law from other states recognizing that parties can agree that an agent, such as MERS, can act on behalf of the noteholder to enforce rights

3

granted in a mortgage. *See Commonwealth Prop. Advocates, LLC v. MERS*, 680 F.3d 1194, 1202, 1204 (10th Cir. 2011); *In re Trierweiler*, 484 B.R. 783, 791-92 (10th Cir. B.A.P. 2012); *Edelstein v. Bank of New York Mellon*, 286 P3d 249, 258 (Nev. 2012); *Residential Funding Co., L.L.C. v. Saurman,* 805 N.W.2d 909, 910 (Mich. 2011).

This case is not about whether MERS is a nominee for the lender pursuant to the language of the mortgage or whether it has the right to enforce the noteholder's rights under the mortgage. Neither of those issues is in dispute in this case. The issue in this case is whether, under Kentucky law, when a MERS member assigns a promissory note to another MERS member, that note assignment effects an assignment of the mortgage that must be recorded. The cases cited by the Defendants that have involved MERS in other states do not address this issue. (DE 53-1, Defs.' Mem. at 8, n.12.) Nor do any of the cases submitted by the Defendants after briefing on their motion to dismiss was complete. (DE 69, Notice of Supplemental Authority.) In fact, neither party has cited any case that addresses the particular issue presented in this one and no case has.

In answering the precise question before this Court, the first issue that must be addressed is whether, under Kentucky law, the assignment of a note secured by a mortgage also transfers the mortgage. If the answer to that question is yes, then the Court must address the second issue which is whether, when a mortgage assignment occurs by way of a note assignment, Kentucky's statutes require that the assignment be recorded.

As to the first issue, the Defendants begin their argument with a section titled, "[T]ransfer of a note does not transfer the mortgage." (DE 53-1, Defs.' Mem. at p. 9.) For this proposition, the Defendants cite *Chambers v. Wool Growers Bank,* 5 Ky. Op. 758, 1872 WL 10797 (Ky. 1872). In that case, the court recognized two kinds of mortgagees – a "beneficial owner" and a mortgagee that has "legal title" to the mortgage. But the court also

4

specifically recognized that "[t]he benefit of the mortgage passed as an incident when the notes were assigned. . . ." *Id.* at *1.

It has long been the law in Kentucky, that, when a note is assigned, the assignee obtains "all interest in the mortgage" including "the right to pursue the mortgaged property for the satisfaction of the note." *Miles v. Gray*, 4 B. Mon. 417, 1844 WL 3490, at *1 (Ky. 1844). "The assignment of a note secured by a mortgage carries with it all the right[s] of [the] mortgagee." *Id* at *2. The Defendants themselves recognize this in their memorandum when quoting the holding in *Drinkard v. George*, 36 S.W.2d 56, 57 (Ky. 1930), that "the transfer of the notes operated as an equitable assignment of the mortgage." (DE 53-1, Defs.' Mem. at 10).

The Sixth Circuit has recently made this clear. "Although a promissory note and mortgage deed are separate legal instruments, the Kentucky courts have long recognized that the assignment of a note secured by a mortgage transfers the interest in the underlying mortgage." *Christian County* Clerk, 515 F. App'x at 455 (citing *Napier v. Duff*, 136 S.W.2d 1083, 1085 (Ky. 1939); *Drinkard*, 36 S.W.2d at 57; *Sec. Inv. Co. of St. Louis v. Harrod Bros.*, 7 S.W.2d 492, 493 (1928); KRS § 355.9-203(7) ("The attachment of a security interest in a right to payment or performance secured by a security interest or other lien on personal or real property is also attachment of a security interest in the . . . mortgage, or other lien."); U.C.C. § 9-203(g)).

Again, the Defendants recognize in their memorandum that, under Kentucky law, when a secured note is assigned, so is the mortgage that secures the note. The Defendants focus more on the second issue that the Court must resolve: whether Kentucky statutes require the filing of a mortgage assignment that is effected solely by assignment of the underlying note. The Defendants argue that that the statutes require only the filing of

5

mortgage assignments that happen by way of a writing separate and apart from the note assignment.

In determining whether this is correct, the Court looks first to the language of the statute. *United States v. Moore*, 567 F.3d 187, 190 (6th Cir. 2000). The applicable provision provides as follows:

> *When a mortgage is assigned* to another person, the assignee shall *file the assignment* for recording with the county clerk within thirty (30) days of the assignment and the county clerk shall attest the assignment and shall note the assignment in the blank space, or in a marginal entry record, beside a listing of the book and page of the document being assigned. Provided, however, that an assignee that reassigns the note prior to the thirtieth day after first acquiring the assignment may request that the subsequent assignee file the unfiled assignment with the new assignment.

KRS 382.360(3) (emphasis added).

Thus, by its language, the statute applies *anytime* "a mortgage is assigned to another person." It does not limit itself to instances in which the assignment occurs by a document separate and apart from the note assignment.

The Defendants argue that the remainder of the provision makes clear that the recording requirement applies only where there is a written document separate and apart from the note assignment. They point out that the provision requires that the assignee "file the assignment." They argue that the requirement that "the assignment" be filed indicates that the legislature envisioned that the assignment would be a physical document. Thus, the Defendants argue, where a mortgage assignment happens not by a physical document but by operation of law because the underlying note is assigned, then the legislature did not intend for that mortgage assignment to be recorded with the county clerk.

Even assuming that the statute does require the filing of a physical document, that does not mean that that the statute does not require the recording of a mortgage

assignment that occurs by way of a note assignment. A note assignment can be a physical document.

It is clear that, in drafting the statute, the legislature envisioned that every mortgage assignment would be accompanied by an assignment of the underlying note. Again, the first sentence of the statute provides that, "[w]here a mortgage is assigned," then "the assignment" must be filed. Thus, "assignment" here seems to refer to a mortgage assignment. Continuing on to the second sentence, it provides:

> Provided, however, that an assignee that reassigns the note prior to the thirtieth day after first acquiring the assignment may request that the subsequent assignee file the unfiled assignment with the new assignment.

KRS § 382.360(3).

In this sentence, the term "assignment" seems to refer to a note assignment. It addresses the situation where the assignee "reassigns the note" after first acquiring "the assignment." The reference to the *reassignment* of the note indicates that the "assignment" also refers to the note assignment. Thus, the statute seems to use the term "assignment" to refer to both a mortgage assignment and note assignment.

This makes sense because, as discussed, under Kentucky law, every assignment of a note secured by a mortgage also transfers the mortgage. Further, "[u]nder Kentucky law, without evidence of a debt, there is no valid enforceable mortgage." *In re Collins*, 456 B.R. 284, 294 (6th Cir. B.A.P. 2011) (citing cases). See *also Carpenter v. Longan*, 83 U.S. 271, 274 (1872) ("The note and mortgage are inseparable; the former as essential, the latter as an incident. An assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity."); *Thomson-Houston Elec. Co. v. Capitol Elec. Co.*, 65 F. 341, 346 (6th Cir. 1894) ("The mortgage had no existence without the note. An assignment of it without the note was void, while an indorsement of the note carried the equitable title to the mortgage without assignment."); 59 C.J.S. Mortgages § 423 ("A mortgage may not be

7

transferred apart from the debt it secures, and an attempt to do so has been held to be nugatory, and an assignment of a mortgage without the debt secured by it conveys, at most, bare legal title to the mortgage, beneficial interest in which remains with the owner of the debt."); 1 The Law of Debtors and Creditors § 8:9 ("If the mortgagee transfers the mortgage without an assignment of the debt, the transaction is treated as a nullity, as the transferee must receive an interest in the mortgaged debt. In contrast, if the mortgagee transfers only the underlying debt, the mortgage is impliedly assigned, resulting in an effective transfer of the mortgagee's interest.")

Thus, under Kentucky law, notes and mortgages are assigned together. Further, a mortgage assignment can be effected with simply the assignment of the secured note. With these principles in mind, the statute should be read to provide that, when a note and mortgage are assigned (because the two are assigned together), the assignment (which may be only the note assignment) should be filed with the county clerk for recording. Under this reading, if the only document that effects the mortgage assignment is the note assignment, then that is the document that should be filed.

The Defendants argue that the statute cannot be read to mandate that note assignments be filed because another Kentucky statute addresses note assignments and makes the recording of them permissive. That statute provides that, "[w]hen any note named in any . . .mortgage. . .is assigned to any other person, *the assignor may* . . .note such assignment in the blank space, or in a marginal entry record, beside a listing of the book and page of the document being assigned . . . ." KRS § 382.290(2) (emphasis added). This statute discusses the *assignor*'s recording duties when a note is assigned and makes the notation of the assignment in the county clerk's records permissive.

In contrast, the two Kentucky statutes that the Plaintiffs charge the Defendants with violating – KRS § 382.360(3) and KRS § 382.365(2) – address the *assignee's* duties.

Thus, interpreting these two statutes to require that the assignee file a note assignment where the note assignment is the document that effects a mortgage assignment does not conflict with KRS § 382.290(2), which addresses the assignor's duties.

Interpreting the statutes to require that all mortgage assignments be filed, even those that occur only by assignment of the secured note, comports with the intent of Kentucky's recording scheme, including the provisions at issue in this action. The primary goal of the entire statutory scheme is to create and maintain "accurate public real estate records." *Union Planters Bank, N.A. v. Hutson*, 210 S.W.3d 163, 168 (Ky. App. 2006). "It is necessary to protect the accuracy and efficiency of the recording system in Kentucky . . . Kentucky's recording statutes lay out a clear system for recording and ordering liens on a piece of real property, and any deviation from the system should be approached cautiously." *Mortgage Elec. Registration Sys, Inc. v. Roberts*, 366 S.W.3d 405, 411 (Ky. 2012) (quotations omitted).

To ensure the accuracy of public records, Kentucky statutes require that all mortgages be recorded in the county clerk's office of the county in which the property is located. KRS § 382.110(1). Likewise, Kentucky's statutes require that liens be promptly released when the secured note is paid off. KRS § 382.365(1) (providing that the "holder of the lien on real property. . . shall release the lien in the county clerk's office where the lien is recorded within thirty (30) days from the date of satisfaction."); KRS § 382.290 (3) (providing that "no person who does not, from such record or assignment of record, appear at the time to be the legal holder of any note secured by any lien. . . shall be permitted to release the lien.")

The two statutory provisions at issue in this action – KRS § 382.360(3) and KRS § 382.365(2) – were added in 2006 and mandate that mortgage assignments be recorded. *See* 2006 Ky. Acts, ch. 183 §§ 17, 18. The legislative history of the amendments makes clear

9

that the legislature intended to ensure that public records accurately reflect the current noteholder and lienholder on mortgaged property.

The Defendants attach to their motion a transcript of a hearing before the Kentucky Senate Banking and Insurance Committee that was conducted on January 26, 2006. In the transcript, Debra Stamper, Vice President and General Counsel of the Kentucky Bankers Association, explains that the new provisions "are for the release of mortgage liens when they have been assigned. It basically requires that when mortgages have been assigned that the lender – who has that new assignment has to go and record the assignment, so that when they're released, or actually in the case when a mortgage is not released, the borrower knows who to go to get it released." (DE 53-6, Tr. at CM-ECF pp. 4-6.)

Senator Tom Buford, the committee chairman, further explained:

[P]eople were getting fast refinancing, and there was not a good record kept, you couldn't find out who had the last mortgage. You thought you were sending the payoff, but they had already been paid off, and there was another company holding that. . . So, trying to speed that process up so that the – mortgage companies, the lawyers and others can determine how to get a payoff made in swift time, proper time . . . That's what that was in there for.

(DE 53-6, Tr. at CM-ECF p. 6.)

Senator Buford later explained that there had been problems with "trying to determine who is the last holder of the lien, and thus, payoffs get delayed and some cannot be made at all, which is unfair to the consumer." (DE 53-6, Tr. at CM-ECF pp. 20-21.)

Thus, the amendments were intended to ensure that borrowers know who to send payoffs to and who to contact to get a lien released after the underlying debt is satisfied. The entity identified in the public record as the current noteholder is the only entity that can release a lien. KRS § 382.290(3). Likewise, it is the entity to whom a payoff would be sent.

Given that Kentucky's recording statutes, including the 2006 amendments, are aimed at creating and maintaining an accurate record of mortgagees and noteholders on mortgaged property, there is no reason that the legislature would not require that mortgage assignments be recorded where they are effected solely by a note assignment. There is no indication either in the language of the statutes at issue or in the entire statutory scheme that the legislature intended that just some mortgage assignments be recorded.

Thus, the statutes require that all mortgage assignments be filed with the county clerk for recording. If the mortgage assignment happens by way of a note assignment, then the note assignment is the document that should be filed with the county clerk.

The Court recognizes that a note assignment may not be a physical document. A note can by assigned simply by delivering the note to the assignee. *See, e.g., Stevenson v. Bank of America*, 359 S.W.3d 466, 470 (Ky. App. 2011) ("when the note was endorsed in blank it became a bearer instrument and no assignment was necessarily required to transfer the right to collect and enforce the note. Mere possession of the original note was sufficient.") But, the fact that a note assignment may not be a physical document does not mean that the statute cannot be read to require the filing of a note assignment where the mortgage assignment occurs by operation of law. In fact, Kentucky's recording statutes specifically provide that "[d]elivering an assignment to the assignee. . .shall not substitute for filing the assignment. . .with the county clerk. . . ." KRS § 382.360(4).

The Supreme Court has noted that "the word 'filed' has different relevant meanings in different contexts." *Kasten v. Saint-Gobain Performance Plastics Corporation*, 131 S.Ct. 1325, 1331 (2011). The Court noted that "[s]ome dictionary definitions of the word contemplate a writing. *See, e.g.*, Webster's New International Dictionary 945 (2d ed.1934) (def.4(a)) (to file is to 'deliver (*a paper or instrument*) to the proper officer so that it is received by him to be kept on file, or among the records of his office' (emphasis added));

11

Webster's Ninth New Collegiate Dictionary 462 (1983) (def.2(a)) (one definition of 'file' is 'to place among official records as prescribed by law')." The Court further noted that other dictionaries, however, define "file" to mean presenting something "in the regular way, as to a judicial or legislative body, so that it shall go upon the records or into the order of business." *Id*. (quoting 1 Funk & Wagnalls New Standard Dictionary of the English Language 920 (rev. ed.1938) (def.2).)

In this case, the first Kentucky statute at issue requires that the assignment be "filed *for recording* with the county clerk." KRS § 382.360(3). It further requires that the county clerk "note the assignment in the blank space, or in a marginal entry record, beside a listing of the book and page of the document being assigned." KRS § 382.360(3). Thus, in the context of this statute, "file" means to present the assignment to the county clerk so that it can be properly recorded in the land records.

The second statute at issue in this action regarding the assignee's duties does not mention filing but instead provides only that "an assignee of a lien on real property shall *record* the assignment in the county clerk's office as required by KRS 382.360." KRS § 382.365(2) (emphasis added). Likewise, as will be discussed below, the relevant statute providing for damages, discusses damages "for failure to *record* an assignment." KRS § 382.365(5) (emphasis added).

Thus, the statutes require that a mortgage assignment be presented to the county clerk in such a way that it may be recorded. Under Kentucky's recording system, a note assignment can be recorded by noting the assignment in the blank space or marginal entry record of the mortgage being assigned. KRS § 382.290(2). This is also precisely the manner by which the clerk of the court is directed to record mortgage assignments. KRS § 382.360(3).

Accordingly, a note assignment that occurs without a physical document can nonetheless be recorded in Kentucky's land records. Thus, where a secured note is assigned by delivering the note to the assignee, the assignment of the mortgage that occurs by operation of law should be recorded as provided in Kentucky's recording statutes.

> **B. The statutes grant a cause of action for failure to record a mortgage assignment.**

The Defendants appear to argue that, even if they were required to record mortgage assignments, the statutes only grant a private right of action to borrowers who have paid off their loan where the mortgagee fails to release the lien. (DE 53-1, Defs. Mem. at 17.)

The statutes explicitly provide a right of action for *any* property owner against a mortgage assignee who fails to record the mortgage assignment. KRS § 382.365(3). Further, the statutes explicitly provide that "[d]amages under this subsection for failure to record an assignment pursuant to KRS 382.360(3) shall not exceed three (3) times the actual damages, plus attorney's fees and court costs, but in no event less than five hundred dollars ($500)." KRS § 382.365(5). Accordingly, there can be no question that the Plaintiffs have a cause of action.

In support of their argument that only borrowers who have paid off their notes can bring an action against their lender for failing to record an assignment, the Defendants cite *Christian Cty. Clerk*. However, in that case, while the county clerks did allege that MERS had violated Kentucky's recording statutes by failing to record assignments, they did not bring suit as property owners but instead as county clerks alleging that MERS had wrongfully deprived them of recording fees.

The Sixth Circuit held that the clerks did not have a private right of action to sue for violations of the recording statutes. This was because it was undisputed that the recording statutes "do not expressly provide the Clerks with a cause of action." 515 F. App'x at 456.

Thus, the clerks sued under Kentucky's negligence per se statute which provides a cause of action to any person "injured by the violation of any statute." KRS § 446.070. In determining if the clerks had a private right of action under the negligence per se statute, the Sixth Circuit had to determine if they were "within the class of persons the statute intended to be protected." *Id*. at 456.

Here, the Plaintiffs allege that they are property owners. As discussed, the statutes explicitly provide a right of action for any property owner against a mortgage assignee who fails to record the mortgage assignment. KRS § 382.365(3). Thus, the standing analysis in *Christian County Clerk* is inapplicable to this case.

The Plaintiffs also cite *Hall v. Mortgage Elec. Registration Sys, Inc.*, 396 S.W.3d 301 (Ky. 2012). In that case, however, the plaintiff sued the mortgagee, not for failing to record a mortgage assignment, but for failing to timely release a lien. *Id*. at 303. The applicable statute provides that a lienholder shall be liable to the property owner for failure to release a lien if the lienholder lacks "good cause" for its failure. KRS § 382.265(4). The Court determined that MERS established "good cause" for failing to timely release the plaintiff's mortgage. *Id*. at 308. Because the plaintiff in *Hall* was suing for failing to release a lien and not for failing to record an assignment, its analysis is inapplicable to this case. The same is true for *Bratton v. Citifinancial, Inc.*, 415 S.W. 3d 625 (Ky. 2013), submitted by the Defendants after briefing on their motion to dismiss was complete. (DE 66, Notice of Supplemental Authority).

Again KRS § 382.365(3) grants a private right of action to *any* property owner against a lienholder who violates subsection (1) or (2). Subsection (1) requires a lienholder to release a lien within 30 days "from the date of satisfaction." Thus, it clearly only applies to a satisfied lien (or, more correctly, note) and damages are only awarded for its violation in that context. Subsection (2), on the other hand, requires a mortgage assignee to record

the assignment. It makes no reference to a satisfied note. Nor would it make sense for the provision to require that mortgage assignments be recorded only in instances where the underlying note is satisfied. Liens are released where the underlying notes are satisfied. Mortgage assignments occur where the notes are still owed.

While the Defendants argue that the Plaintiffs do not have a private right of action, they also argue that the statutes explicitly provide for damages for failure to record an assignment and, thus, damages are the Plaintiff's exclusive remedy. Thus, the Defendants argue, the Plaintiffs' claim for injunctive relief must be dismissed.

Where a statute both declares an act unlawful and specifies the remedy available, the "aggrieved party is limited to the remedy provided by the statute." *Grzyb v. Evans*, 700 S.W.2d 399, 401 (Ky. 1985). In *Benningfield v. Pettit Environmental, Inc.*, 183 S.W.3d 567 (Ky. App. 2005), the Kentucky Court of Appeals held that "*Grzyb* does not require the statute to specify that the remedy provided is exclusive. *Grzyb* only requires that the statute 'specify the civil remedy available.'" 183 S.W.3d at 571 (quoting *Grzyb*, 700 S.W.2d at 401).

Again, the statute provides "[d]amages under this subsection for failure to record an assignment pursuant to KRS 382.360(3) shall not exceed three (3) times the actual damages, plus attorney's fees and court costs, but in no event less than five hundred dollars ($500)." KRS § 382.365(5). Thus, the statutes explicitly provide for damages and set forth a maximum and minimum amount. The statutes do not provide for injunctive relief.

Accordingly, the Plaintiffs' claim for injunctive relief will be dismissed.

C.     **The Plaintiffs have sufficiently alleged a "meeting of the minds."**

The Defendants also argue that the Plaintiffs' claim for civil conspiracy should be dismissed because the "have not sufficiently pled that Defendants acted pursuant to a "meeting of the minds." (DE 53-1, Defs.' Mem. at CM-ECF p. 24.) Under Kentucky law, a

15

civil conspiracy is "a corrupt or unlawful combination or agreement between two or more persons to do by concert of action an unlawful act, or do to a lawful act by unlawful means." *James v. Wilson*, 95 S.W.3d 875, 896 (Ky.App.2002).

The Plaintiffs allege that the Defendants "established MERS in order to avoid the requisite payment of recording fees to County Clerks for assignments of mortgage loans and other self-serving purposes." (DE 32, Amended Complaint ¶ 41.) They further allege that each Defendant was a member and active participant in MERS, including taking part in the acts designed to avoid Kentucky's recording statutes. (DE 32, Amended Complaint ¶¶ 41-52.) These allegations sufficiently plead a "meeting of the minds." That is the only question before the Court on this motion with regard to the conspiracy claim.

### D. Plaintiffs do not assert a "claim" for class certification.

The Defendants ask the Court to dismiss count III of the Complaint because, with this count, the Plaintiffs seek class certification. The Defendants argue that this is not a cause of action but instead a request for a particular action by the Court, i.e., certification of a class. The Plaintiffs agree that they do not purport to assert a claim for class certification. Accordingly, there is no claim within count III to dismiss.

### E. The mortage's notice provision does not apply to this lawsuit.

The Defendants argue that the claims of certain Plaintiffs are barred because the applicable mortgages prohibit the borrowers from commencing any judicial action "that arises from the [lender's] actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument" without first notifying the lender of "such alleged breach" and affording the lender "a reasonable period after the giving of such notice to take corrective action." (DE 53-2, Mortgage, CM-ECF p. 14.)

The Plaintiffs do not allege that the Defendants breached the mortgages. Nor do they complain of any actions that the Defendants took "pursuant to" the mortgages. The Plaintiffs allege that the Defendants violated state statutes that require that mortgage assignments be recorded.

Accordingly, the notice provision in the mortgages is inapplicable to this lawsuit.

### F. Plaintiff Day's ownership of the mortgaged real state is in dispute.

The Kentucky statutes provide that "[a] proceeding may be filed by any owner of real property" against a lienholder that violates the duty to record a mortgage assignment. KRS 382.365(3). The Defendants argue that Plaintiff Day is not an "owner of real property" because she surrendered the property in a Chapter 13 bankruptcy proceeding. They attach Day's Chapter 13 plan stating that, as part of the plan, she agrees to surrender certain property located on Hume Drive in Paris, Kentucky. The plan identifies Bank of America as the secured creditor. (DE 53-9, Chapter 13 Plan.)

"When a debtor surrenders the property, a creditor obtains it immediately, and is free to sell it and reinvest the proceeds." *Assocs. Commercial Corp. v. Rash*, 520 U.S. 953, 962 (1997). "Accordingly, upon confirmation of a Chapter 13 plan providing for surrender under §1325(a)(5)(C), the estate no longer has an interest in the collateral." *In re Particka,* 355 B.R. 616, 624 (Bankr.E.D.Mich.,2006). A Chapter 7 debtor surrenders property to the trustee. *In re Nolan*, 232 F.3d 528, 534 (6th Cir. 2000).

In arguing that Plaintiff Day continues to own the property, the Plaintiffs cite *In re Kasper*, 309 B.R. 82 (Bankr. D. Col. 2004). That case deals with the surrender of property under a Chapter 7 bankruptcy petition and 11 U.S.C. § 521. The Plaintiffs also discuss case law regarding a debtor's "abandonment" of property. This case deals with a "surrender" of property under a Chapter 13 bankruptcy petition and 11 U.S. C. §1325(a)(5)(C).

17

Plaintiff Day does raise a factual dispute, however. She asserts that the deed on the property is still in her name and that the local land records reflect that she still owns the property. Accordingly, there is a factual dispute regarding Plaintiff Day's ownership of the mortgaged property that cannot be resolved on a motion to dismiss.

### G. Joinder of required parties will be addressed after the class certification issue is resolved.

Rule 19 requires that the a plaintiff must join any person who can be served and joined without destroying subject-matter jurisdiction if that person "claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may . . . impair or impede the person's ability to protect the interest." Fed. R. Civ. P. 19(a)(1)(B)(i).

Plaintiff Rhonda Day and Marty Day are co-mortgagors on the mortgage that forms the basis for Rhonda Day's suit. Likewise, Gregory Baker is a co-mortgagor on Plaintiff Sheila Baker's mortgage. Neither Marty Day nor Gregory Baker are Plaintiffs in this action.

Nevertheless, Rule 19(d) provides an exception to the joinder requirements for class actions. *See* 7 Fed. Prac. & Proc. Civ. § 1626 (3d ed.). The Plaintiffs have moved for certification of a class. Accordingly, the Court will not address the joinder of required parties until after it resolves the Plaintiffs' motion for class certification. The Defendants may reassert this portion of their motion, if appropriate, after the Court resolves the motion for class certification.

### III. Conclusion

For all these reasons, the motion to dismiss filed by Defendants Bank of America, N.A., JPMorgan Chase Bank, N.A., and Wells Fargo Bank, N.S. (DE 53) is GRANTED in

part and DENIED in part. The motion is GRANTED as to the Plaintiffs' claim for injunctive relief and that claim is hereby DISMISSED. The motion is otherwise DENIED.

Dated this 31st day of March, 2014.

KAREN K. CALDWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY